IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| ANITA FRANTZ, | : |
| Plaintiff, | : |
| VS. | : |
| | : 1 : 10-CV-59 (WLS) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on April 30, 2010, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations. (Doc. 2). Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."  *Bloodsworth*, 703 F.2d at 1239.  "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."  *Cornelius*, 936 F.2d at 1145-1146.

*Administrative Proceedings*

Plaintiff filed applications for disability insurance benefits and Supplemental Security Income benefits on November 3, 2003. (*See* Tr. 382).  After a hearing before an Administrative Law Judge ("ALJ"), Plaintiff's claims were denied.  (Tr. 390).  On appeal, the Appeals Council remanded the case to the ALJ for further proceedings. (Tr. 415).  A second hearing was held before an ALJ in Thomasville, Georgia on June 23, 2008.  (Tr. 21).  Thereafter, in a hearing decision dated August 27, 2008, the ALJ determined that the Plaintiff was not disabled.  (Tr. 21-32).  The Appeals Council subsequently denied review and the ALJ's decision thereby became the final decision of the Commissioner.  (Tr. 9-11).

*Statement of Facts and Evidence*

The Plaintiff was thirty-nine (39) years of age at the time of the second hearing before the ALJ, and alleged disability since February 15, 2005, due to super ventricular tachacardia, panic attacks, severe panic disorder, diabetes, high blood sugar, and hypothyrodism. (Tr. 677, 644, 63). Plaintiff has a GED and some technical college, and past relevant work experience as a court clerk, a daycare worker, a salesperson, and an officer manager. (Tr. 64).

As determined by the ALJ, Plaintiff suffers from the following severe impairments: anxiety disorder, depressive disorder, and hypothyroidism. (Tr. 23). The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and she remained capable of performing medium exertional work. (Tr. 26). The ALJ found that Plaintiff could perform medium work as follows:

> [T]he claimant has the residual functional capacity to perform medium exertional work that requires no climbing of ladders, ropes, or scaffolds and no work around hazards and that can be done despite mild pain and fatigue. The claimant is best suited for simple, repetitive work which does not require constant and prolonged interpersonal interactions.

(Tr. 26). Although Plaintiff could not return to her past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy, and thus, was not disabled. (Tr. 30).

## DISCUSSION

Plaintiff argues that the ALJ failed to properly consider Plaintiff's thalamus infarction, give proper weight to Plaintiff's examining physicians, properly consider Plaintiff's credibility, and properly provide hypothetical questions. (Doc. 15).

### *Thalamus Infarction*

Plaintiff maintains that the ALJ erred by not properly evaluating the effects of all her impairments in combination. (Doc. 15). Plaintiff specifically alleges that the ALJ ignored the fact that thalamus infarctions have been associated with panic disorder and are known to cause memory disorders.

If a claimant has alleged several impairments, the ALJ must consider the impairments in

3

combination in order to determine if the claimant is disabled.  *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991).  However, a diagnosis alone is insufficient to support a finding of disability, but must be accompanied by evidence of functional limitation.  *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D.Ala. 2002).  "In other words, the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."  *McCruter*, 791 F.2d at 1547.

Herein, the ALJ determined Plaintiff was not disabled because she did not have an impairment or combination of impairments that met or medically equaled a listing.  (Tr. 25).  Additionally, the ALJ "considered all [the] symptoms and the extent to which [the] symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (Tr. 26).  The medical evidence shows that on April 25, 2007, a CT scan of Plaintiff's head showed a "rounded low attenuation lesion in the right thalamus thought to most likely represent a lacunar infarction." (Tr. 523).  Despite that finding, Dr. Register's notes from that same day state that Plaintiff's CT scan of the head was "normal".  (Tr. 510, 514).

Records from Georgia Pines indicate that, on June 5, 2007, Plaintiff's memory was intact, and she was  goal-directed, with logical thoughts. (Tr. 548).  Further, two Psychiatric Review Techniques found Plaintiff did not have any marked or extreme functional limitations due to her panic disorder and general anxiety.  (Tr. 557 – 70; 621-34).  Two Mental Residual Functional Capacity Assessments also showed that Plaintiff "appears able to retain most of the essential mental and social abilities needed to sustain the performance of simple work tasks."  (Tr. 617-19; 635-37).  The record does not appear to show any connection between the thalamus infarction and Plaintiff's

alleged impairments, nor does the record indicate there was any treatment or medical follow-up regarding the thalamus infarction.

The ALJ determined that Plaintiff's diagnosis of a thalamus infarction did not support a functional limitation. Moreover, Plaintiff bears the burden to establish a disability, not the Commissioner. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). As there is substantial evidence in the record to support the ALJ's decision that Plaintiff's thalamus infarction did not cause a disabling impairment, the ALJ did not commit reversible error.

## *Treating Physician*

Plaintiff asserts that the ALJ erred by failing to rely on treating physicians Register and Ahmed when determining the residual functional capacity. (Doc. 15). The determination of the residual functional capacity is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect his ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The regulations state that the final responsibility for assessing a claimant's residual functional capacity rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at

the claimant's impairments.  20 C.F.R. § 404.1527(d)(2).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.  "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records.  *Id.*

The ALJ found that Dr. Register's opinion of Plaintiff's limitations is not entitled to significant weight as it is not supported by the objective medical evidence and is inconsistent with his own treatment notes.  Dr. Register submitted a questionnaire as to Plaintiff's mental residual functional capacity.  (Tr. 369-73).  The questionnaire stated that Plaintiff had marked limitations in social interaction, marked limitations in sustained concentration or persistence, and moderate to marked limitations in adaption.  (Tr. 369-73).  Based on this assessment, Dr. Register opined that Plaintiff had a condition equivalent in severity to listing 12.06 A and B or 12.06 A and C, due to Plaintiff's recurrent, severe panic attacks.  (Tr. 369).  Dr. Register stated that Plaintiff cannot go to the store or drive by herself, cannot stay at home by herself most of the time, and is very forgetful. (Tr. 369).

Dr. Register's treatment notes do not support his finding of disability.  It appears Plaintiff initially began seeing Dr. Register because she was pregnant.  (Tr. 365).  The treatment notes state that, in September of 2002, Plaintiff had a history of severe panic attacks but they were being controlled with her current medications.  (Tr. 365).  Throughout 2003 the treatment notes focus on Plaintiff's pregnancy, and only mention the medications Plaintiff is taking to control her panic disorder.  (Tr. 364).   In August of 2006, Dr. Register noted that Plaintiff has panic disorder, but Plaintiff has "weaned herself down" to less medication, and her panic attacks are decreasing.  (Tr.

363).  Furthermore, Dr. Register's treatment notes from October 2006 and May 2007 do not mention Plaintiff's panic attacks.  (Tr. 367, 537).

Plaintiff alleges that Dr. Register consistently stated that Plaintiff could not function independently outside the home. (Doc. 15).  However, the record indicates that only on the day Dr. Register filled out the functional questionnaire do his notes state that Plaintiff complained she has panic attacks several times a week, is not able to drive or go to the store by herself without having an attack, and that her concentration is moderately impaired.  (Tr. 539, 369).  On that day, Plaintiff was seen by the nurse practitioner, who noted that Plaintiff was being seen in order to fill out paperwork for an attorney.  (Tr. 539).

Throughout Plaintiff's treatment, her panic disorder appears to be well controlled by medications and secondary, or non-existent, to Plaintiff's chief complaint at each appointment. Dr. Register's treatment notes are inconsistent with his questionnaire, which found Plaintiff was totally disabled due to panic attacks.  Thus, the ALJ did not err when he did not give significant weight to Dr. Register's opinion that Plaintiff was disabled.

Plaintiff also maintains that the ALJ erred when he failed to give substantial weight to Dr. Ahmed, an internist who treated Plaintiff from November 2007 until February 2008.  (Doc. 15; Tr. 592-608).  Dr. Ahmed also submitted questionnaires regarding Plaintiff's mental and physical residual functional capacity. (Tr. 701-706).  As Plaintiff appears to focus on an alleged error in the ALJ's determination of Plaintiff's mental functional capacity, the Court will address Dr. Ahmed's questionnaire as to Plaintiff's mental residual functional capacity. (*See* Doc. 15).  Dr. Ahmed opined that Plaintiff had marked to extreme limitations in social interaction, marked to extreme limitations in sustained concentration or persistence, and moderate to extreme limitations in adaption.  (Tr. 701-703).

Dr. Ahmed's assessment of Plaintiff is inconsistent with his treatment notes. The treatment notes state that Plaintiff initially presented to Dr. Ahmed in November of 2007 for nausea, vomiting, and chest pain. (Tr. 606). Follow-up appointments were for headaches, high sugar count, flu-like symptoms, and diabetes. (Tr. 592-608). Plaintiff only saw Dr. Ahmed on one occasion for anxiety, which was noted as a follow-up of Plaintiff's diabetes and anxiety, and to receive prescription medication. (Tr. 596). His treatment notes indicate that Plaintiff has a history of anxiety, but at each appointment, the notes reflect that, in regard to Plaintiff's psychiatric system, Plaintiff "denies change in [her] stress level, denies mood swings, sleeps well, denies change in [her] eating habits, and denies any suicide ideation or attempts." (Tr. 593, 597, 600, 603, 607). Additionally, at each appointment Plaintiff appeared awake and alert; was oriented to person, place and time; and her mood and affect were appropriate. (Tr. 594, 598, 601, 604, 608).

Dr. Ahmed's treatment notes did not show the type of severe limitations he alleges in the questionnaire. In fact, Dr. Ahmed's only notes regarding Plaintiff's anxiety is that she has a history of anxiety and is taking anxiety medication. Thus, the ALJ did not err when he determined that Dr. Ahmed's opinion regarding Plaintiff's limitations was not supported by his own treatment notes.

Additionally, the opinions of Drs. Register and Ahmed are not supported by the record as a whole. For example, on July 10, 2007, Plaintiff was stable in all areas and her panic attacks had subsided some. (Tr. 543). Georgia Pines also noted that Plaintiff had a GAF score of 55, which indicates moderate limitations. (Tr. 548).[1] Additionally, in 2004, Plaintiff was seen by Dr. Poole,

---

[1] While Plaintiff alleges that the ALJ erred by relying on the GAF score, the ALJ merely discussed one piece of evidence to help support his decision that the opinions of Drs. Register and Ahmed should not be afforded great weight. The GAF score was determined by a mental health specialist, and was used to show the evidence in the record did not support Dr. Register's and Dr. Ahmed's opinion regarding Plaintiff's functional limitations.

who noted Plaintiff had chronic anxiety disorder, but he did not appear to provide any treatment for her anxiety. (Tr. 293-301).

Based on the treatment notes and on the record as a whole, the ALJ did not err when he determined that the opinions of both Drs. Register and Ahmed should not be afforded great weight. As there is substantial evidence in the record supporting the ALJ's decision, he did not commit reversible error when he discredited the opinions of Drs. Register and Ahmed.

*Conservative treatment*

Plaintiff also alleges that the ALJ erred by rejecting Plaintiff's and Dr. Register's explanation that Plaintiff was unable to receive additional mental health treatment because Plaintiff could not afford it. (Doc. 15). The ALJ found that Plaintiff's medical treatment was routine and conservative, and discounted Plaintiff's and Dr. Register's assertion that Plaintiff did not pursue mental health treatment due to her lack of funds. (Tr. 29). The ALJ did not give significant weight to their opinions, in part, because Plaintiff could afford to smoke "one-to-1/2 pack [of cigarettes] per day", and did not attempt to receive free medications or treatment. (Tr. 29).

The record shows that when Plaintiff finally went to a mental health specialist, Plaintiff was groomed appropriately, had good eye contact, and a reactive affect. (Tr. 548). Plaintiff's memory was intact and goal-directed, and she had logical thoughts. (Tr. 548) Plaintiff also had no reports of auditory or visual hallucinations, and had no paranoia. (Tr. 548). Additionally, the mental health specialist determined Plaintiff had a GAF score of 55. (Tr. 548). After Plaintiff's initial appointment on June 5, 2007, she missed her July 3, 2007 appointment. (Tr. 546). On July 10, 2007, Plaintiff was reported to be stable in all areas, including her mental status. (Tr. 543). Plaintiff reported that she was having panic attacks but they had subsided a little. (Tr. 543). From the record, it appears Plaintiff was only treated by Georgia Pines Health Services on two occasions, and did not

9

see any other mental health professionals.

The record also shows that Plaintiff stated she could not afford to be treated by an endocrinologist, that she was unable to afford a mammogram, and could not afford different diabetes pills. (Tr. 537, 363, 510). However, there does not appear to be evidence that Plaintiff was unable to afford mental health treatment, nor that she needed more treatment than she received at Georgia Pines. The ALJ merely pointed out that Plaintiff's and Dr. Register's opinion that Plaintiff could not afford treatment appeared to be contradicted by her smoking habit and the record as a whole. (Tr. 29). As there is substantial evidence in the record to support the ALJ's decision not to afford great weight to Plaintiff's and Dr. Register's opinion that Plaintiff could not afford treatment, the ALJ did not commit reversible err.

*Non-examining psychological consultants*

Plaintiff also alleges that the ALJ erred by giving "great weight" to the opinions of non-examining state agency psychological consultants. (Doc. 15). State agency psychological consultants are highly qualified psychologists who are experts in Social Security disability evaluation. 20 C.F.R. § 404.1527(f)(2)(i). "In appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p. The weight given to a non-examining consultant's opinion depends on "the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. Appx. 869, 873 (11th Cir. 2011); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).

After concluding that Plaintiff's examining physicians' treatment notes did not support their opinion that Plaintiff was disabled, the ALJ determined that the opinions of the non-examining psychological consultants should be given great weight because the opinions were well supported by

the record. (Tr. 29 – 30). The Psychiatric Review Technique recognized that Plaintiff had been diagnosed with panic attacks, but Plaintiff reported a good response to medication. (Tr. 569). Also, Plaintiff is able to cook, clean, and care for her children; shop with her husband; make decisions regarding personal finances; care for her personal hygiene; and complete chores without prompting. (Tr. 569). The Mental Residual Capacity Assessment determined that Plaintiff is capable of carrying out short and simple instructions throughout a normal work day, but would have some problems relating effectively and consistently with co-workers. (Tr. 619).

 As the evidence outlined above demonstrates, the non-examining psychological consultants' opinions were consistent with the evidence contained in the treatment notes of the examining physicians Register and Ahmed, and the record as a whole. For example, Georgia Pines determined Plaintiff was only suffering from moderate limitations, and in July 2007 was stable in all areas. (Tr. 543). Plaintiff testified that she does household chores, goes to the store with her mother or husband, sometimes cooks, and bathes and dresses herself. (Tr. 683-84; 658). As the opinions are consistent with the medical evidence, the ALJ did not err in giving great weight to the non-examining psychological consultants.

*Conclusion*

The ALJ did not err when he did not give significant weight to the opinions of Drs. Register and Ahmed, as their treatment notes and the record as a whole were inconsistent with their opinions that Plaintiff had a mental impairment that met or medically equaled a listing. Additionally, the ALJ did not err when he gave great weight to the non-examining psychological consultants' opinions because their opinions were supported by the record as a whole and the treatment notes of Plaintiff's examining physicians.

*Plaintiff's Credibility*

Plaintiff alleges that the ALJ erred when he required objective evidence when assessing the Plaintiff's credibility. (Doc. 15). If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then he must consider the claimant's subjective testimony of the symptoms. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence. 20 C.F.R. § 404.1529(c). The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information. SSR 96-7p. Plaintiff cannot be deemed to lack credibility solely because her testimony is not substantiated by objective medical evidence. *Id.*

Herein, after discussing in detail the Plaintiff's testimony and subjective complaints, the ALJ determined that:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible as they are not substantiated by objective medical evidence.

(Tr. 28). The ALJ detailed the symptoms Plaintiff testified to having and the symptoms reflected in

the record, but found that Plaintiff's physical and mental impairments did not prevent her from performing medium work activity with specific limitations. (Tr. 28-30).

The ALJ applied the correct legal standard, in that he relied on the record as a whole to determine that Plaintiff's testimony was not credible in light of the evidence. After detailing the evidence provided in the record, the ALJ stated

> The medical evidence of record reflects that the claimant has symptoms and limitations; however, they do not prevent her from working. The claimant has described daily activities which are not limited to the extent one would expect, given he[r] subjective complaints. The claimant testified she cooks, does laundry, uses the dishwasher, and cleans bathrooms. She is apparently able to care for young children at home (2 to 5 children during the period under consideration) which can be quite demanding both physically and emotionally. She shops with her husband or mother for groceries and makes decision[s] regarding the household finances. She is able to care for her personal hygiene and complete chores without prompting or redirection from others. Claimant's medical treatment has been essentially routine and/or conservative in nature with infrequent trips to doctors for her allegedly disabling symptoms. Claimant's medications have been shown to be relatively effective in controlling her symptoms.

(Tr. 29).

The ALJ did not require objective proof of the symptoms, as the Plaintiff has alleged. The ALJ has clearly articulated his findings regarding Plaintiff's credibility, which rely on the objective medical evidence, notes from examining and non-examining physicians, Plaintiff's medical treatment history, Plaintiff's daily activities, and Plaintiff's statements regarding her symptoms. (Tr. 28-30); *see Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (in making a credibility determination, "the ALJ questioned [the plaintiff's] contentions that she could not maintain consciousness or perform light work, in light of her ability to drive, provide childcare, bathe and care for herself, exercise, and perform housework").

The ALJ adequately considered the Plaintiff's subjective accounts of symptoms and physical

13

limitations, and did so pursuant to the governing rulings and regulations, specifically Social Security Ruling 96-7p.  The ALJ also provided adequate and specific reasons for discrediting Plaintiff's subjective accounts, relying on the medical evidence that conflicted with Plaintiff's allegations of a disabling impairment.  As the ALJ did not require objective proof of symptoms, and relied on the entire record in determining Plaintiff's credibility, the ALJ did not commit reversible error.

*Vocational Expert's Testimony*

Plaintiff asserts that the ALJ committed error when he failed to "spell out" how mild to moderate pain would cause work limitations when presenting hypothetical questions to the vocational expert (hereinafter "VE"). (Doc. 15).

Once a claimant proves at Step Four that she can no longer perform her past relevant work, the burden shifts to the Commissioner to establish that other jobs exist in the national economy that the claimant can perform.  *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).  The testimony of a VE may provide the basis for a finding by the ALJ that the Plaintiff can still perform other jobs at Step Five.  *Id.*  "In order for a vocational expert's testimony to constitute substantial evidence [for a finding at Step Five], the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

After examining the record as a whole, the ALJ determined Plaintiff could perform work that could be done despite "mild pain".  (Tr. 26).  As a result of this finding, the ALJ posed hypothetical questions to the VE regarding work performance with mild, mild to moderate, and moderate pain. (Tr. 697).  The VE testified that the levels of pain would not change the hypothetical answers.  (Tr. 697).  As the ALJ provided sufficient information regarding the level of pain, the hypothetical questions were sufficient to contemplate Plaintiff's impairment of "mild pain".  *See e.g. White v. Apfel*, 2000 WL 724410, *8 (S.D. Ala. May 15, 2000) (finding an ALJ's hypothetical sufficient

when it stated that the pain level for purposes of the hypothetical was moderate); *Wells v. Chater*, 60 F.3d 827, *3 (4th Cir. 1995) ("there is no requirement that an ALJ's questions quantify 'frequency and duration' of pain").

The ALJ's findings regarding the VE's testimony is supported by substantial evidence, and the questions regarding pain were sufficient. Thus, the ALJ did not err when he relied on the VE's testimony.

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 2nd day of September, 2011.


s/ ***THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**


llf